# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Norfolk Division

| | |
|---|---|
| TIANDRA WILLIAMS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 2:25-cv-437 |
| | : |
| EQUIFAX INFORMATION SERVICES, LLC; | : |
| EXPERIAN INFORMATION SOLUTIONS, INC.; | : |
| and TRANS UNION, LLC, | : |
| | : |
| Defendants. | : |

## COMPLAINT

Plaintiff Tiandra Williams, by counsel, files this Complaint against Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union, LLC. In support of her claims, Ms. Williams alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages; costs; and attorneys' fees brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x.

2. Ms. Williams is the victim of identity theft, which "has emerged" as "one of the fastest growing white-collar crimes in the United States." *Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 505 (4th Cir. 2007). Surveys have shown that "between 1998 and 2003, approximately 27.3 million adults discovered they were the victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone." *Id.*

3. The FCRA "provides the primary recourse for victims of identity theft." Christopher P. Couch, *Forcing the Choice Between Commerce & Consumers: Application of the FCRA to Identity Theft*, 53 Ala. L. Rev. 583, 587 (2002).

4. The FCRA requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681.

5. To achieve this purpose, the FCRA sets out requirements and obligations that consumer reporting agencies must follow when consumers dispute the accuracy of the information reported in their credit reports. *Id.* Thus, the FCRA holds the credit reporting agencies responsible for taking reasonable steps to correct a consumer's credit report after he or she brings the theft to the agency's attention. *See Sloane*, 510 F.3d at 506–07 ("Of course, Equifax bore no responsibility for the initial theft, but the FCRA makes the company responsible for taking reasonable steps to correct Suzanne's credit report once she brought the theft to the company's attention; this Equifax utterly failed to do.").

6. Beginning in or around 2023, Ms. Williams learned that her identity had been stolen.

7. Without her knowledge, consent, or permission, various debts were incurred in her name, including past due rents.

8. Ms. Williams did not authorize anyone to obtain housing or open accounts in her name, and she did not benefit from any such arrangements.

9. After amounts purportedly owed were not paid, the past due amounts were sent to various collection agencies.

10. Ms. Williams then learned that Equifax, Experian, and Trans Union were each reporting several collection accounts on her reports stemming from past due rental debt and other unfamiliar accounts.

11. When Ms. Williams disputed the fraudulent accounts with Equifax, Experian, and Trans Union, the credit reporting agencies each failed to adequately investigate her dispute or remove the collection accounts from her credit reports.

12. As a result, Ms. Williams alleges claims against Equifax, Experian, and Trans Union for: (1) violating the FCRA, §1681e(b), by failing to reasonably ensure the maximum possible accuracy of her credit reports; and (2) violating the FCRA, §1681i, by failing to fully investigate her disputes.

## JURISDICTION AND VENUE

13. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 168lp.

14. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Ms. Williams's claims occurred in this District, where she resides.

## PARTIES

15. Ms. Williams is a natural person residing in this District and Division and a consumer as defined by 15 U.S.C. § 1681a(c).

16. Equifax is a foreign limited liability company. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

17. Experian is a foreign corporation. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

18. Trans Union is a foreign limited liability company. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTS

19. In 2023, Ms. Williams discovered that Equifax was reporting a collection account belonging to CCS Collections relating to a debt that she did not incur or authorize.

20. Upon information and belief, that account related to a past due utility bill purportedly owed in the State of Florida.

21. Ms. Williams, however, only ever resided in the State of Florida more than 15 years ago, at which time she was a minor.

22. Ms. Williams first disputed that collection account with Equifax in summer 2023.

23. On or about July 19, 2023, Equifax responded to Ms. Williams's dispute and verified the account.

24. Upon information and belief, Equifax did not conduct any investigation into Ms. Williams's dispute and, instead, relied entirely on the investigation results provided to it by CCS Collections.

25. Notwithstanding Equifax's lacking investigation, the CCS Collections account was eventually removed from Ms. Williams's credit report.

26. Nonetheless, Ms. Williams later learned that several other debts were purportedly incurred in her name without her knowledge or permission.

27. Those debts then appeared on Ms. Williams's credit reports, as did several addresses in Florida and Georgia at which Ms. Williams did not reside and never resided.

28. The purported debts reflected on Ms. Williams's credit reports included past due rent in the State of Florida, past due utilities in the State of Georgia, and a debt purportedly owed to a check cashing entity.

29. Between her three credit reports, the credit reporting agencies reported no less than seven collection accounts that did not belong to Ms. Williams, as well as more than ten addresses.

30. Ms. Williams disputed the inaccurate information with Equifax, Experian, and Trans Union in April 2024.

31. In her disputes, Ms. Williams explained that someone else had opened the accounts in her name without her permission.

32. Ms. Williams made specific reference to a police report filed in Georgia—where some of the identity theft appears to have taken place—with the Dunwoody Police Department.

33. Upon information and belief, Equifax, Experian, and Trans Union each forwarded notice of Ms. Williams's disputes to the furnishers of the collection accounts.

34. Upon information and belief, after Equifax, Experian, and Trans Union received the furnishers' responses to Ms. Williams's disputes, they relied entirely on the furnishers' investigations.

35. In other words, the credit reporting agencies did not conduct any other investigation into Ms. Williams's disputes about the collection accounts.

36. Thus, nearly all of the disputed accounts were verified and remained on Ms. Williams's credit reports.

37. Ms. Williams disputed the remaining collection accounts again in January 2025.

38. Each of Ms. Williams's letters again disputed the collection accounts as not belonging to her.

39. And as before, Ms. Williams's dispute letters made specific reference to the police report that she filed in Georgia.

40. Upon information and belief, Equifax, Experian, and Trans Union each forwarded notice of Ms. Williams's disputes to the furnishers of the collection accounts.

41. And upon information and belief, Equifax, Experian, and Trans Union again relied entirely on the furnishers' investigations and did not conduct any other investigation into Ms. Williams's disputes.

42. Thus, the results of Ms. Williams's disputes turned entirely on the furnishers' investigation results.

43. In response to Ms. Williams's January 2025 dispute, Equifax deleted the collection accounts disputed by Ms. Williams but began reporting a different collection account relating to a debt that Ms. Williams did not incur or authorize.

44. Experian, meanwhile, verified the purported debt with the check cashing entity and began reporting another rental debt previously unreported.

45. Trans Union deleted two disputed accounts but continued to report two others.

46. Ms. Williams disputed the remaining collection accounts in May 2025.

47. In late May, Equifax deleted the lone remaining collection account relating to Ms. Williams's disputes.

48. In June, Trans Union deleted a collection account relating to past due rent but verified the purported debt with the check cashing entity.

49. Experian likewise deleted a collection account relating to past due rent but verified the purported debt with the check cashing entity.

50. At some point in July, Experian stopped reporting the collection account relating to the check cashing entity.

51. On or about July 17, Ms. Williams sent a follow-up dispute to Trans Union relating to the remaining collection account.

52. As of the date of this filing, Trans Union continues to report the collection account relating to the check cashing entity.

53. As a result of Defendants' conduct, Ms. Williams has suffered significant actual damages, including a decreased credit score, the inability to obtain credit, embarrassment, humiliation, and emotional distress.

### *Defendants' FCRA Violations Were Willful*

54. As a standard practice, the credit reporting agencies do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite several court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

55. Upon information and belief and consistent with their standard policies and procedures, the credit reporting agencies automatically generated their "investigation" results here once the furnishers verified the statuses of the accounts, and they did not take any extra actions to verify the accuracy of the information that the furnishers provided.

56. Instead, the credit reporting agencies blindly accepted the furnishers' versions of the facts and continued to report the inaccurate, derogatory information on Ms. Williams's credit reports.

57. The credit reporting agencies continue the practice of parroting their furnishers' responses despite several lawsuits alleging (and establishing) that they fail to conduct reasonable investigations under the FCRA.

58. The credit reporting agencies do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

59. As a result, at all times relevant to this Complaint, Equifax's, Experian's, and Trans Union's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, its conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to properly investigate consumers or implement any procedure to identify and correct these common errors before furnishing reports.

## COUNT ONE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)
## (EQUIFAX, EXPERIAN, and TRANS UNION)

60. Ms. Williams incorporates the preceding allegations.

61. Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. Williams's credit reports and credit files that they published and maintained.

62. Because of Equifax's, Experian's, and Trans Union's conduct, Ms. Williams suffered actual damages, including, without limitation, a decreased credit score, the inability to obtain credit, embarrassment, humiliation, and emotional distress.

63. Equifax's, Experian's, and Trans Union's conduct in violating § 1681e(b) was willful, rendering them liable to Ms. Williams for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

64. In the alternative, Equifax, Experian, and Trans Union were negligent, entitling Ms. Williams to a recovery under 15 U.S.C. § 1681o.

## COUNT TWO:
## VIOLATION OF FCRA, 15 U.S.C. § 1681i
## (EQUIFAX, EXPERIAN, and TRANS UNION)

65. Ms. Williams incorporates the preceding allegations.

66. Equifax, Experian, and Trans Union violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide the furnishers with all the relevant information about Ms. Williams's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Ms. Williams in violation of §1681i(a)(4); (4) failing to promptly delete the disputed inaccurate items of information from Ms. Williams's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

67. Because of Equifax's, Experian's, and Trans Union's violations of §1681i, Ms. Williams suffered actual damages, including, but not limited to, a decreased credit score, the inability to obtain credit, embarrassment, humiliation, and emotional distress.

68. Equifax's, Experian's, and Trans Union's violations of § 1681i were willful, rendering it liable to Ms. Williams for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

69. In the alternative, Equifax, Experian, and Trans Union were negligent, entitling Ms. Williams to a recovery under 15 U.S.C. § 1681o.

**PLAINTIFF DEMANDS A JURY TRIAL.**

        Respectfully submitted,

**PLAINTIFF**

By:   */s/ Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB # 93738
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiff*